## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLAND HAMMELL,<br>    Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| COUNTY OF NORTHAMPTON; | : | |
| | : | |
| PRIMECARE MEDICAL, INC.; | : | |
| | : | |
| JOHN DOE CORRECTIONS OFFICERS 1–10; | : | |
| | : | |
| and JOHN DOE MEDICAL PROVIDERS 1–10,<br>    Defendants. | : | |
| | : | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, together with supplemental state-law claims, arising from the deliberate indifference of Defendants to the serious medical needs of Plaintiff Roland Hammell while he was a pretrial detainee in the custody of the County of Northampton at the Northampton County Prison.

2. Over a period of months, Mr. Hammell repeatedly presented to Defendants with obvious and worsening edema (severe swelling) in both feet and legs. Despite his visible and deteriorating condition, and despite being transported to an outside hospital on multiple occasions, Defendants failed to provide him with constitutionally adequate medical care. As a direct and proximate result, Mr. Hammell developed an infection that necessitated the amputation of his left foot in February 2025, and he continues to suffer serious, permanent injury to his remaining leg.

3. Mr. Hammell's injuries were not the product of an isolated lapse. They were the foreseeable result of long-standing policies, customs, and practices of the County of Northampton and its

contracted medical provider, PrimeCare Medical, Inc., of denying, delaying, and rationing necessary medical care to persons confined at Northampton County Prison, policies and customs that have been the subject of numerous prior lawsuits placing Defendants on notice of the constitutional violations occurring at the facility.

4. Plaintiff seeks compensatory and punitive damages, together with attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

## II. JURISDICTION AND VENUE

5. This action arises under 42 U.S.C. §§ 1983 and 1988 and the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because all Defendants are situated in this District and because the events and omissions giving rise to Plaintiff's claims occurred at the Northampton County Prison, located in Northampton County, Pennsylvania, which lies within this judicial District and the Allentown vicinage.

## III. PARTIES

8. Plaintiff Roland Hammell is an adult individual and a citizen of the Commonwealth of Pennsylvania. At all times material to this Complaint, Mr. Hammell was a pretrial detainee held in the custody of the County of Northampton at the Northampton County Prison.

9. Defendant County of Northampton (the "County") is a political subdivision and municipal corporation organized under the laws of the Commonwealth of Pennsylvania. The County owns,

operates, manages, staffs, funds, and is legally responsible for the Northampton County Prison and the Northampton County Department of Corrections, including the policies, practices, customs, training, and supervision relating to the provision of medical care to persons confined there. The County is a "person" within the meaning of 42 U.S.C. § 1983 and acted under color of state law at all relevant times.

10. Defendant PrimeCare Medical, Inc. ("PrimeCare") is a Pennsylvania corporation with a principal place of business in Harrisburg, Pennsylvania, that contracts with the County to provide medical, nursing, and related health-care services to persons confined at the Northampton County Prison. By contracting to perform the traditionally exclusive governmental function of providing medical care to incarcerated persons, PrimeCare acted under color of state law and is a "person" subject to suit under 42 U.S.C. § 1983.

11. Defendants John Doe Corrections Officers 1–10 are correctional officers, supervisors, and/or other employees or agents of the County who, at all relevant times, were responsible for the care, custody, safety, and welfare of Mr. Hammell and for ensuring his access to necessary medical care. Their true identities are presently unknown to Plaintiff and will be substituted by name once ascertained through discovery. Each is sued in his or her individual capacity and acted under color of state law.

12. Defendants John Doe Medical Providers 1–10 are physicians, physician assistants, nurses, nurse practitioners, and/or other medical or health-care personnel employed by or acting on behalf of PrimeCare and/or the County who, at all relevant times, were responsible for examining, diagnosing, treating, and arranging care for Mr. Hammell. Their true identities are presently unknown to Plaintiff and will be substituted by name once ascertained through discovery. Each is sued in his or her individual capacity and acted under color of state law.

13. At all times material hereto, each Defendant acted under color of the statutes, ordinances, regulations, customs, and usages of the Commonwealth of Pennsylvania and the County of Northampton, and within the course and scope of his, her, or its employment or agency.

### IV. FACTUAL ALLEGATIONS

14. On or about November 18, 2024, Mr. Hammell entered the Northampton County Prison as a pretrial detainee and came into the custody and care of the County and PrimeCare.

15. Shortly after his admission and continuing thereafter, Mr. Hammell developed and exhibited obvious, painful, and progressively worsening edema (severe swelling), in both of his feet and lower legs. This condition was visible to lay and medical observers alike and constituted a serious medical need.

16. Mr. Hammell repeatedly complained of his condition and repeatedly requested medical attention from correctional staff and medical staff at the Northampton County Prison. The John Doe Corrections Officers and John Doe Medical Providers were aware of his condition through his complaints, sick-call requests, and their own direct observations.

17. On several occasions, the severity of Mr. Hammell's condition was such that he was transported from the Northampton County Prison to St. Luke's University Hospital Bethlehem Campus for evaluation and treatment of the edema in both feet.

18. Notwithstanding these hospital transports and the obvious seriousness of his condition, Mr. Hammell was not provided with proper, timely, or adequate medical treatment. Defendants failed to ensure appropriate diagnosis, monitoring, follow-up care, medication, specialist referral, and continuity of treatment necessary to address his deteriorating condition and to prevent its known complications.

19. Defendants knew, or in the exercise of any professional judgment plainly should have known, that untreated or inadequately treated edema and the associated vascular and infectious complications carry a substantial risk of tissue damage, infection, gangrene, and limb loss. Defendants disregarded that known and obvious risk.

20. As a direct and proximate result of Defendants' failure to provide adequate and timely medical care, the condition in Mr. Hammell's left foot progressed to a severe infection.

21. In or about February 2025, as a direct and proximate result of Defendants' deliberate indifference and the resulting uncontrolled infection, Mr. Hammell's left foot was amputated.

22. The amputation of Mr. Hammell's left foot was preventable and would not have occurred had Defendants provided constitutionally adequate and professionally competent medical care for his known and serious condition.

23. In or about October 2025, Mr. Hammell was released from the Northampton County Prison, in part to obtain the medical and rehabilitative therapy that Defendants had failed to provide during his confinement.

24. Mr. Hammell's medical crisis did not end with his release. He is currently hospitalized at St. Luke's University Hospital for serious complications now affecting his remaining (right) leg, complications that flow from the same untreated and inadequately treated vascular and infectious condition that Defendants disregarded during his confinement.

25. As a direct and proximate result of Defendants' conduct, Mr. Hammell has suffered and continues to suffer the amputation of his left foot, the loss of bodily function and mobility, additional injury to and the threatened loss of his right leg, severe and permanent physical injury, disfigurement, extreme pain and suffering, emotional distress, humiliation, loss of life's pleasures, past and future medical expenses, and loss of earning capacity.

5

26. At all relevant times, Mr. Hammell was wholly dependent upon Defendants for his medical care and was unable, by virtue of his incarceration, to obtain medical treatment from any other source.

## V. PATTERN, PRACTICE, AND NOTICE

27. Mr. Hammell's experience was not an aberration, but was instead the predictable consequence of entrenched policies, practices, and customs of the County and PrimeCare in the delivery (and denial) of medical care at the Northampton County Prison.

28. For more than a decade, the County and/or PrimeCare have been named as defendants in numerous civil-rights actions filed in this District by persons confined at the Northampton County Prison alleging the unconstitutional denial of, or deliberate indifference to, serious medical needs and other unconstitutional conditions of confinement. These actions placed the County and PrimeCare on actual and constructive notice of a pattern of constitutionally deficient medical care at the facility, including but not limited to the following:

   a. *Flyte v. County of Northampton*, No. 5:19-cv-00703 (E.D. Pa.): Kyle Flyte, an inmate at Northampton County Prison, died in custody. The estate alleged that jail staff failed to investigate why a blanket was hung over the detainee's cell bars, allowing him to hang himself with a shoelace between half-hour guard rounds.

   b. *Edwards v. Northampton County*, No. 5:12-cv-05323 (E.D. Pa.): Demar Edwards was held at Northampton County Prison while waiting for trial, starting in September 2010. About two weeks in, he found a sore, discolored spot on his right ankle, near the site of an old surgery. Testing showed he had MRSA, a serious staph infection that resists antibiotics. Over the next several months the infection kept coming back and new sores appeared on his lower leg. He said the prison put him in an unclean cell and did not keep

up the steps needed to control the infection, and that the medical staff let days pass without changing his bandages.

c. *Kreis v. Northampton County Prison*, No. 5:21-cv-02360 (E.D. Pa.): August Kreis has epilepsy and was taking three different anti-seizure medicines at the time he arrived at Northampton County Prison in November 2020. The staff were supposed to keep giving him those medicines. Kreis alleges that during his first week he received no medicine at all, and that he missed about nine doses over the following weeks because the medicines were not in stock. He had seizures during this period, including one on December 8, 2020. He was taken out to St. Luke's Hospital seven times.

d. *Singer v. Slate Belt Medical Center*, No. 5:25-cv-06754 (E.D. Pa.): Claude Singer was arrested at a rehabilitation center and taken to Northampton County Prison on January 1, 2025. He alleges that when he got to the prison, he was refused a wheelchair or walker, was forced to walk about 200 yards on his own, and was not given any medical check. Singer then fell while getting up from the toilet, hit his head, and knocked himself unconscious; he woke up in a pool of blood, called for help, and waited about an hour before medical staff arrived. He was taken to a hospital and received nine stitches in his head. After he was brought back, he fell a second time onto his wheelchair, badly bruising himself with internal bleeding, and was given nothing for the pain.

29. Despite these repeated and well-documented notices, the County and PrimeCare failed to adopt, implement, or enforce adequate policies, training, staffing, supervision, and practices necessary to ensure constitutionally adequate medical care, and instead maintained the deficient policies, customs, and practices that caused Mr. Hammell's injuries.

**CAUSES OF ACTION**

**COUNT I**
**42 U.S.C. § 1983 — Fourteenth Amendment**
**Deliberate Indifference to Serious Medical Needs**
**Plaintiff v. John Doe Corrections Officers 1–10, John Doe Medical Providers 1–10, and PrimeCare**

30. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in the above paragraphs above as though fully set forth herein.

31. As a pretrial detainee, Mr. Hammell had a clearly established right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to receive adequate medical care and to be free from deliberate indifference to his serious medical needs. At a minimum, the protections afforded a pretrial detainee are no less than those guaranteed a convicted prisoner under the Eighth Amendment standard articulated in *Estelle v. Gamble*, 429 U.S. 97 (1976).

32. Mr. Hammell's edema, infection, and resulting risk of limb loss constituted serious medical needs that were obvious, that had been diagnosed by a physician as requiring treatment, and that no reasonable person would conclude did not warrant medical attention.

33. The John Doe Medical Providers were deliberately indifferent to Mr. Hammell's serious medical needs by, among other things, failing to properly examine, diagnose, monitor, and treat his condition; delaying and denying necessary care; failing to provide or arrange appropriate follow-up, specialist, and continuity care; persisting in a course of treatment they knew or should have known to be ineffective; and ignoring the obvious risk of infection and limb loss.

34. The John Doe Corrections Officers were deliberately indifferent to Mr. Hammell's serious medical needs by, among other things, ignoring his repeated complaints and visible deterioration, failing to summon or facilitate medical care, failing to ensure that he received care that had been ordered or that was obviously required, and having actual knowledge of his serious medical need while disregarding it.

35. Each of these Defendants acted with subjective knowledge of, and conscious disregard for, the excessive risk to Mr. Hammell's health and safety. Their acts and omissions were not the product of reasonable medical judgment but of deliberate indifference.

36. The conduct of the John Doe Defendants was intentional, malicious, wanton, reckless, and/or callously indifferent to Mr. Hammell's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

37. As a direct and proximate result of the deliberate indifference of the John Doe Corrections Officers and John Doe Medical Providers, Mr. Hammell suffered the injuries and damages described above, including the amputation of his left foot and continuing injury to his right leg.

**COUNT II**
**42 U.S.C. § 1983 — Municipal (*Monell*) Liability**
**Plaintiff v. Defendant County of Northampton**

38. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

39. A municipality is liable under 42 U.S.C. § 1983 where the execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts a constitutional injury.

40. The County maintained policies, customs, and practices that were the moving force behind the violation of Mr. Hammell's constitutional rights, including: (a) a policy or custom of denying, delaying, or rationing necessary medical care to detainees in order to reduce costs; (b) a custom of failing to ensure timely diagnosis, treatment, follow-up, and continuity of care; (c) inadequate staffing and resourcing of medical services at the Northampton County Prison; and (d) a custom of acquiescence in known deficiencies in the medical care provided by its contractor.

41. The County was deliberately indifferent to the constitutional rights of detainees in its failure to adequately train, supervise, and discipline its correctional and medical personnel with respect to

the identification and treatment of serious medical needs and the facilitation of access to medical care.

42. The pattern of prior lawsuits, settlements, grievances, and complaints described in Section V placed the County on actual and constructive notice that its policies, customs, training, supervision, and contractor-oversight practices were causing detainees to be deprived of constitutionally adequate medical care, yet the County failed to take reasonable corrective action. The County's deliberate indifference is thereby established.

43. By contracting the provision of inmate medical care to PrimeCare, the County did not delegate away its non-delegable constitutional obligation to provide adequate medical care to those it incarcerates, and it remained deliberately indifferent in its selection, oversight, and retention of PrimeCare notwithstanding PrimeCare's known deficiencies.

44. The County's policies, customs, and failures to train and supervise were the moving force and a direct and proximate cause of the violation of Mr. Hammell's constitutional rights and the injuries and damages described above.

**COUNT III**
**42 U.S.C. § 1983 — *Monell* Liability of Private Medical Contractor**
**Plaintiff v. Defendant PrimeCare Medical, Inc.**

45. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

46. A private corporation that contracts to provide medical services to incarcerated persons acts under color of state law and is subject to liability under 42 U.S.C. § 1983 on the same basis as a municipality where its own policy or custom causes a constitutional violation.

47. PrimeCare maintained policies, customs, and practices that were the moving force behind the violation of Mr. Hammell's constitutional rights, including: (a) policies or customs designed to minimize the cost of care by denying, delaying, or limiting necessary treatment, off-site care,

specialist referrals, and hospitalization; (b) a custom of failing to ensure adequate diagnosis, monitoring, follow-up, and continuity of care for detainees with serious and deteriorating conditions; (c) inadequate staffing, policies, and protocols for the management of vascular conditions, edema, and infection; and (d) a failure to adopt or enforce adequate policies for ensuring that hospital recommendations and ordered care were actually implemented upon a detainee's return to the facility.

48. PrimeCare was deliberately indifferent in its failure to adopt adequate policies and in its failure to train, supervise, and discipline its medical personnel with respect to the treatment of serious medical needs, despite the obvious risk that such failures would result in the denial of constitutionally adequate care.

49. The pattern of prior lawsuits and claims described in Section V placed PrimeCare on actual and constructive notice that its policies and customs were causing detainees at the Northampton County Prison to be deprived of constitutionally adequate medical care; despite this notice, PrimeCare failed to take reasonable corrective action.

50. PrimeCare's policies, customs, and failures to train and supervise were the moving force and a direct and proximate cause of the violation of Mr. Hammell's constitutional rights and the injuries and damages described above.

**COUNT IV**
**Professional Negligence — Medical Malpractice**
**Plaintiff v. John Doe Medical Providers 1–10**

51. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

52. At all relevant times, the John Doe Medical Providers owed Mr. Hammell a duty to exercise that degree of care, skill, and judgment ordinarily exercised by reasonably competent members of their respective professions under the same or similar circumstances.

11

53. The John Doe Medical Providers breached that duty and were negligent and careless, including in the following respects: (a) failing to properly and timely examine, diagnose, and assess Mr. Hammell's edema, vascular condition, and infection; (b) failing to provide appropriate and timely treatment, medication, and wound care; (c) failing to properly monitor his deteriorating condition; (d) failing to make and act upon timely referrals to specialists and to ensure necessary off-site and follow-up care; (e) failing to implement the recommendations and orders of treating hospital providers; and (f) otherwise failing to provide care consistent with accepted standards of medical practice.

54. As a direct and proximate result of the negligence and carelessness of the John Doe Medical Providers, Mr. Hammell suffered the injuries and damages described above, including the amputation of his left foot, the threatened loss of his right leg, severe and permanent physical injury, pain and suffering, emotional distress, disfigurement, loss of life's pleasures, medical expenses, and loss of earning capacity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roland Hammell respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. Compensatory damages in an amount to be determined at trial, including damages for past and future medical expenses, physical injury, disfigurement, pain and suffering, emotional distress, loss of life's pleasures, and loss of earning capacity;

b. Punitive damages against the individual John Doe Defendants and against PrimeCare Medical, Inc. in an amount sufficient to punish and deter such conduct;

c. Reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988;

d. Pre-judgment and post-judgment interest as permitted by law; and

12

e.  Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Date: July 2, 2026                                              Respectfully submitted,

*/s/ Brian J. Zeiger*
Brian J. Zeiger, Esquire (PA I.D. #87063)
*/s/ Laura Zipin*
Laura Zipin, Esquire (PA I.D. #324914)

**Levin & Zeiger LLP**
Two Penn Center
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
(215) 546-0340
zeiger@levinzeiger.com
zipin@levinzeiger.com
*Counsel for Plaintiff*

13